1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FRANCES S.,[1]

                    Plaintiff,

        v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                    Defendant.

No.    1:24-cv-3034-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
REMANDING FOR MORE
PROCEEDINGS**

        Plaintiff Frances S. asks the Court to reverse the Administrative Law

Judge's (ALJ) denial of Title 2 benefits. Plaintiff claims she is unable to work due

to longstanding chronic low back and hip pain and weekly sciatica flares. Because

the ALJ improperly discounted Plaintiff's symptom claims, this matter is

remanded for further proceedings.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as

"Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

# I.    Background

In August 2016, Plaintiff applied for benefits under Title 2, claiming disability based on the above-listed conditions.[2] Plaintiff, who previously worked as a community worker, cashier/checker, stock clerk, and home attendant, alleges disability beginning March 25, 2014, at the age of 55.[3] After the agency denied benefits both at the initial and reconsideration levels, ALJ Virginia Robinson held an in-person hearing in May 2018, at which Plaintiff and a vocational expert testified.[4] ALJ Robinson issued an unfavorable decision.[5] The Appeals Council vacated the ALJ's decision and remanded it for the ALJ to apply a date last insured of December 31, 2016, and to ascertain whether Plaintiff's work as a cashier/checker could be considered past relevant work.[6]

A second administrative hearing was held in November 2020 by telephone before ALJ Robinson.[7] Plaintiff and a vocational expert testified. The ALJ again denied benefits.[8] Upon review, the Appeals Council remanded the matter back to

---

[2] AR 428–29.

[3] AR 273, 17 (amending the alleged onset date to March 25, 2014).

[4] AR 42–91, 210–23.

[5] AR 151–64.

[6] AR 170–73.

[7] AR 92–118.

[8] AR 175–89.

the ALJ because the ALJ's decision relied on evidence that was not contained in the record.[9]

A third administrative hearing was held in June 2022 before ALJ Timothy Mangrum by telephone.[10] Plaintiff and a vocational expert testified. Almost a year later, the ALJ issued a decision denying benefits.[11] As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through December 31, 2016.

- Step one: Plaintiff engaged in substantial gainful activity the last quarter of 2016 but not otherwise during the relevant period.

- Step two: Plaintiff had the following medically determinable severe impairments: chronic low back pain, left hip strain/trochanteric bursitis, obesity, and hypertension.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except:

---

[9] AR 197–200.

[10] AR 119–37.

[11] AR 14–38. Per 20 C.F.R. § 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[she] cannot climb ladders, ropes, or scaffolds, can occasionally climb stairs, can frequently stoop, and can occasionally crouch, kneel, and crawl. The claimant should avoid concentrated exposure to excessive vibration and hazards.

- Step four: Plaintiff was capable of performing past relevant work as a community worker.[12]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[13]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[14] Substantial evidence is "more than a mere scintilla but less than

---

[12] AR 17–30.

[13] AR 1–5.

[14] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 404.1520(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

1   a preponderance; it is such relevant evidence as a reasonable mind might accept as

2   adequate to support a conclusion."[15]

### III.    Analysis

4   Plaintiff argues the ALJ erred by rejecting Plaintiff's symptom testimony

5   and when evaluating the medical-opinion evidence, and requests a remand for

6   payment of benefits. The Commissioner argues the ALJ reasonably evaluated

7   Plaintiff's subjective complaints and the medical-opinion evidence. As is explained

8   below, the ALJ erred, but a remand for further proceedings rather than for a

9   payment of benefits is appropriate at this time.

### A.    Symptom Reports: Plaintiff establishes consequential error.

11  Plaintiff argues the ALJ erred by rejecting her symptom testimony for

12  reasons that were not specific, clear, and convincing. The Commissioner argues

13  that the ALJ reasonably evaluated Plaintiff's symptom complaints. As is discussed

14  below, the ALJ did not provide a rationale clear enough to convince the Court that

---

[15] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1  each of Plaintiff's symptom reports should be discounted for the reasons

2  articulated.

3      1.  <u>Standard</u>

4      The ALJ must identify what symptom claims are being discounted and

5  clearly and convincingly explain the rationale for discounting the symptoms with

6  supporting citation to evidence.[16] This requires the ALJ to "show his work" and

7  provide a "rationale . . . clear enough that it has the power to convince" the

8  reviewing court.[17] Factors the ALJ may consider when evaluating the intensity,

9  persistence, and limiting effects of a claimant's symptoms include: 1) objective

10 medical evidence, 2) daily activities; 3) the location, duration, frequency, and

11 intensity of pain or other symptoms; 4) factors that precipitate and aggravate the

12 symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the

13 claimant takes or has taken to alleviate pain or other symptoms; 6) treatment,

14 other than medication, the claimant receives or has received for relief of pain or

15 other symptoms; and 7) any non-treatment measures the claimant uses or has used

16 to relieve pain or other symptoms.[18]

---

[16] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). *See also Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7.

[17] *Smartt*, 53 F.4th at 499 (alteration added).

[18] 20 C.F.R. § 404.1529(c)(2), (3).

2.    <u>Plaintiff's Symptom Reports</u>

In the Adult Function Report, Plaintiff stated that she is unable to stand for more than 20 minutes or sit for 30 minutes at a time, and she is unable to stoop, squat, kneel, and climb.[19] She has difficulty with vacuuming, mopping, sorting laundry, loading or unloading the dishwasher, gardening, or caring for her grandchildren.[20] She has difficulty climbing stairs.[21] She is able to shower and dress herself, although this takes an extended amount of time and she must sit in the shower when shaving and she has difficulty putting on pants.[22] She can manage her medication, make her bed, stretch, walk for 10 to 20 minutes, and groom herself.[23] She tries to go outside daily to walk with her walking stick.[24] She is able to cook frozen dinners, make sandwiches, and other easy meals.[25] She is unable to sleep on her left side because her hip pain wakes her.[26] She rarely drives

---

[19] AR 500.

[20] AR 500–01.

[21] AR 500–02.

[22] AR 501.

[23] AR 501.

[24] AR 503.

[25] AR 502.

[26] AR 501.

because the medication she takes impairs her driving abilities.[27] She has difficulty staying on task due to inattention and does not handle stress or changes in routine well.[28]

During the May 2018 hearing, Plaintiff testified that, about the time of the alleged onset date in March 2014, she was dealing with a stressful situation with her older sister's health, which made it difficult to focus.[29] Her sciatic pain was also "horrible," particularly if she drove, and her sciatic pain flared about once a week.[30] She testified that she was only able to stand or walk about 15 minutes at a time before she would experience pain shooting down her leg.[31] She testified that she was able to walk about a block and, due to her sciatic pain and pain in her wrists and arms, she could not lift her newborn grandchildren, who weighed about 6–7 pounds.[32] She had been using a cane for about 2–3 years at the recommendation of her treating doctor, Dr. Julia Robertson, and she went to physical therapy to learn to walk both with and without the cane.[33] Plaintiff shared that she has pain and

---

[27] AR 503.

[28] AR 505–06.

[29] AR 51.

[30] AR 52.

[31] AR 52–53.

[32] AR 53–54.

[33] AR 55–57.

limitations with her wrists, including difficulty putting her seat belt on, and that she may have surgery on her wrists.[34] She stated that she is unable to sweep or mop because of her low-back and sciatic pain.[35] She takes medication, including opioid pain medication for about eight years, anti-inflammation medication, and weight-loss medication.[36] She lived with her adult daughter, son-in-law, and two school-aged grandchildren, who she helped supervise after school.[37]

During the second hearing in November 2020, Plaintiff testified that she has sciatic pain when she is on her feet for an extended period.[38] She stated that her pain fluctuates and that on bad days she is able to only be on her feet for a total of three hours or less and that she uses a cane to assist with her balance.[39]

During the third hearing in June 2022, Plaintiff shared that she attempted a job providing care for others but the work caused her back, hips, and legs to give out.[40] She stated that she lost the job because she was only able to show up about

---

[34] AR 57–58.

[35] AR 58.

[36] AR 60–61.

[37] AR 71–72.

[38] AR 106–07.

[39] AR 108.

[40] AR 128.

1  two times a week due to her health conditions.[41] She testified that she often falls

2  and that because of a fall in 2016 she broke her left hand and had to have surgery;

3  however, the surgery did not fix her injuries and she now can lift only about five

4  pounds with her left hand.[42] More recently, she fell when she was at a department

5  store and she broke her nose.[43] She stated that she falls because her legs give out

6  on her.[44]

7      3.    ALJ's Analysis

8      The ALJ found Plaintiff's "statements concerning the intensity, persistence,

9  and limiting effects of these symptoms . . . not entirely consistent with the medical

10  evidence and other evidence in the record for the reasons explained in this

11  decision."[45] To support this general finding, the ALJ found that the "[t]he relevant

12  medical evidence of record generally did not support the claimant's alleged loss of

13  function during the relevant period" and that Plaintiff's activities of daily living

14  when "taken together and considered in conjunction with the medical evidence of

---

[41] AR 129.

[42] AR 129.

[43] AR 130.

[44] AR 130–31.

[45] AR 24.

record . . . suggest that the claimant can perform work within the . . . [RFC] on a sustained and continuous basis."[46]

4.    Activities of Daily Living

The ALJ may discount a claimant's reported disabling symptoms if she can spend a substantial part of the day engaged in pursuits inconsistent with the reported disabling symptoms or involving the performing of work-related functions.[47] However, the ALJ must consider whether the nature of the activities allows for frequent breaks that would be inconsistent with maintaining a daily work schedule, and the ALJ should not penalize the claimant for attempting to engage in normal life activities.[48]

Here, the ALJ highlighted that Plaintiff "reported she was able to maintain her own personal care, prepare some meals, do some chores, shop in stores, and

---

[46] AR 25, 29.

[47] *Molina*, 674 F.3d at 1113.

[48] *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (cleaned up)). *See also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.").

walk daily."[49] The ALJ found that when Plaintiff's activities of daily living are "taken together and considered in conjunction with the medical evidence of record, they suggest that the claimant can perform work within the" RFC.[50] After reviewing the record, the ALJ fails to convince the Court that the cited activities, when considered together, are inconsistent with Plaintiff's reported difficulties standing for more than 20 minutes at one time, her history of falling on occasion due to her legs giving out on her, and her sciatic pain that flares. Moreover, the ALJ failed to consider Plaintiff's report that for relatively short periods of time she can engage in the relied-on activities, with Plaintiff's use of a walking stick on her walks, that she prepares simple meals during which she does not have to stand long, and that she can take breaks while doing her chores. Therefore, these activities, even when considered cumulatively, do not constitute a specific, clear, and convincing reason to discount Plaintiff's reported symptoms. Nor do these activities, when considered cumulatively, reflect that she can perform light work which would require a combined total of six hours of standing and walking.

    5.   <u>Improvement with Minimal Treatment</u>

       In his response, the Commissioner argues that the ALJ discounted Plaintiff's symptom complaints because she improved with limited treatment.[51] As

---

[49] AR 27.

[50] AR 29.

[51] ECF No. 10 at 2.

DISPOSITIVE ORDER - 12

highlighted by Plaintiff in her reply, the ALJ did not specifically and clearly discount Plaintiff's reported symptoms because of improvement with limited treatment. Instead, the ALJ generally discussed Plaintiff's medical treatment when summarizing the objective medical evidence. For instance, the ALJ found that Plaintiff was minimally treated for her low back and left hip pain and that such symptoms were generally stable during the relevant time period.[52] The ALJ also mentioned:

- "[m]edication was prescribed, and chiropractic care was recommended at that time; however, it does not appear the claimant followed through with same."[53]

- "However, the claimant also reported she was walking twice a day, with no assistive device noted, and chiropractic care was again recommended with no evidence that the claimant received same."[54]

- "The claimant was prescribed medication for back pain, weight gain, and hypertension, and imaging of the hip and lumbar spine were ordered.

---

[52] AR 29.

[53] AR 25 (citing AR 1538, a March 24, 2014 treatment note by ARNP Cowin).

[54] AR 26 (citing AR 1559–60, a June 16, 2014 treatment note by ARNP Cowin, which states "We haven't gotten a response to our request for chiropractic care" and that Plaintiff reported increased pain by walking twice a day).

1    However, it does not appear that the claimant pursued imaging at that

2    time."[55]

3    This general discussion of Plaintiff's medical treatment does not qualify as

4    the ALJ "showing his work" in a manner that clearly convinces the reviewing court

5    that Plaintiff's symptoms are inconsistent with the purported minimal treatment.

6    Moreover, the Court finds that Plaintiff's treatment was not minimal. During the

7    relevant time period, Plaintiff was prescribed and took opioid pain medications to

8    lessen her back, hip, and sciatic pain: the taking of prescribed opioid pain

9    medication for years is not minimal treatment.[56] Plus, the ALJ discredited Plaintiff

10   for not seeking chiropractic care without addressing whether such care was ever

11   approved by Plaintiff's insurance.[57] In addition, the ALJ highlighted that Plaintiff

12   was walking twice a day but did not also mention that she reported that the

13   increased walking increased her pain.[58] Finally, although the ALJ mentioned that

14   hip and lumbar spine imaging was not taken in September 2015, there is other

---

[55] AR 25 (citing AR 834–35, a September 15, 2015 treatment note by Dr. Robertson).

[56] *See, e.g., Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (finding opioid medications and steroid injections not conservative treatment for fibromyalgia).

[57] *See* AR 1559 ("We haven't gotten a response to our request for chiropractic care. . . . I think her best treatment option for her [left SI dysfunction] would be chiropractic care, so far this is not authorized." (cleaned up)).

[58] AR 1559–60.

imaging in the record—before, during, and after the relevant period—that does not

indicate improvement in Plaintiff's conditions, conditions that became particularly

painful after her workplace injury in 2011:

- 2010: minimal marginal osteophyte formation with some mild disc space narrowing at L3-4.[59]

- 2012: partial sacralization of L5 on the right.[60]

- 2014: "ventral angulation of the distal aspect of the sacrum and some bony irregularity identified at the area of angulation. This may represent a sacral facture, age indeterminate. Unfortunately, this area is not included on prior lumbar spine films and lumbar MR dated 7/17/2009."[61]

- 2016: partial sacralization of L5 on the right.[62]

- 2017: nondisplaced fracture at the lateral malleolus in the left ankle.[63]

- 2021: moderate degenerative spondylosis in the lower lumbar spine.[64]

---

[59] AR 2112.

[60] AR 673, 2065.

[61] AR 961.

[62] AR 865.

[63] AR 865, 932–34.

[64] AR 1999.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

- 2022:  moderate degenerative disease involving cervical spine discs and facet joints.[65]

Given the imaging results of record, it is not clear, without articulation by the ALJ, why the lack of imaging between the imaging order date of September 15, 2015, and the August 30, 2016 performance of hip imaging is a convincing basis to discount Plaintiff's reported symptoms.

In summary, the ALJ did not identify specific treatment that Plaintiff engaged in that improved her low back, left hip, and sciatic symptoms. The Court cannot affirm an ALJ decision based on a finding not made by the ALJ.[66]

6.    Objective Medical Evidence

An ALJ may consider discrepancies between a claimant's reported symptoms and the observations of providers and evaluators.[67] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the

---

[65] AR 2172.

[66] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[67]  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

claimant's complaints.[68] "Objective medical evidence" means signs, laboratory findings, or both.[69] Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[70]

Here, the ALJ discounted Plaintiff's reported symptoms because "[t]he relevant medical evidence of record generally did not support the claimant's alleged loss of function during the relevant period."[71] The ALJ summarized several imaging results, treatment notes, and medical-evaluation reports: including summarizing some of Plaintiff's reported symptoms to the provider or evaluator and the provider's or evaluator's objective findings.[72] The ALJ also mentioned "there is no medically-documented need for or use of an assistive device during the relevant period."[73]

---

[68] *Smartt*, 53 F.4th at 498 (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

[69] 20 C.F.R. § 404.1502(f).

[70] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

[71] AR 25.

[72] AR 25–27.

[73] AR 27.

DISPOSITIVE ORDER - 17

Plaintiff argues that the ALJ's summary of several medical records failed to satisfy the ALJ's burden to set forth clear and convincing reasons for discounting specific symptoms. The Court agrees with Plaintiff. For instance, the ALJ did not clearly and convincingly discount Plaintiff's reported symptom that she is unable to stand or walk for longer than 20 minutes at a time before she needs to sit for a period of time before standing or walking again due to the combined effects of her left ankle instability, chronic low back pain, and left hip strain/trochanteric bursitis. The ALJ did not clearly and convincingly discount this reported symptom to the extent consistent with the articulated light-work RFC.

Immediately before and during the relevant period, there were several providers that observed Plaintiff with lumbar, sciatic, or hip pain or tenderness. For instance, one day before the alleged onset date, two different providers assessed:

- tenderness and pain on palpation of SI joint and hip area.[74]

- "Palpation of the left sacroiliac notch produces pain. She does have a lot of guarding behavior that inhibits him [sic] in the exam, but essentially she has a negative straight leg raise bilaterally and a positive Faber on the left. Palpation of the left ankle reveals

---

[74] AR 852.

generalized tenderness. . . . I would limit her standing, walking[,] lifting and bending."[75]

Similar observations were made on other occasions during the relevant period.[76] In addition to the observed pain and tenderness, there were mentions of falls by Plaintiff or an impaired gait during the relevant period, and thereafter.[77]

---

[75] AR 1536–37.

[76] *See, e.g.*, AR 844 (Apr. 21, 2014: pain on palpation of left SI joint; abnormal, neuropathic pain noted in lower extremities); AR 1560 (June 16, 2014: antalgic gait, favors left side, tender to left SI area"); AR 830 (Sept. 15, 2015: tenderness, sacroiliac joint tenderness, trochanteric burse pain, and pain on palpation in left and right hips; tenderness on palpation and spams to lumbosacral spine with reduced range of movement).

[77] *See, e.g.*, AR 1021 (mentioning that she fell off steps in June 2016 and broke her left wrist); AR 801–04 (Aug. 2016: reporting falling recently and that her hips started hurting after that; observed with hip tenderness); AR 1559 (antalgic gait); AR 1030 (reporting that she fell off a ladder in 2017); AR 922 (June 29, 2017: "Pt. reports she fell down last year and twisted her ankle; observed with edema); AR 906–10 (Nov. 2017: "She fell and bruised her right knee, she went to the ER due to it causing her pain and discomfort when she walked"; observed with tenderness on palpation to the SI joint and spasms that radiated down her right leg); AR 2169–70 (Dec. 2021: reporting that she fell while showering, hurting her right knee and

Moreover, although the ALJ appropriately found there is "no medically-documented need for or use of an assistive device during the relevant period,"[78] this finding by itself failed to appreciate that both before and after the relevant period of March 25, 2014, to December 31, 2016, a cane or crutch, or gait training, was medically recommended. For instance, the ALJ did not discuss that in September 2012 Dr. Thysell noted that Plaintiff needed crutches, that in March 2013, Dr. Bruce recommended gait training with occupational therapy to assist Plaintiff with her use of a walking stick/cane, and that in May 2018 Dr. Robertson recommend that Plaintiff use a cane at times "depend[ing] on day."[79] Similarly, based on Plaintiff's gait, in May 2020 Dr. Robertson recommended that Plaintiff undergo

exacerbating her sciatic pain; observed with moderate amount of tenderness to medial right patella mild swelling to medial aspect of right knee); AR 1905–08 (Dec. 2021: reporting that she fell in the park and observed with abnormal motor strength and limited range of movement of muscles); AR 2160–61 (May 2022: reporting that she fell when getting out of her car and hit her face; observed with ecchymosis to right check and tenderness over the nasal bridge and tenderness in her neck, along with tenderness over right lateral and posterior hip and pain with flexion and abduction/abduction).

[78] AR 27.

[79] AR 1227, 950–51, 1363.

physical therapy to improve her gait.[80] Based on the record, although there is no medical record authored during the relevant period that recommends the use of an assistance device, it was not reasonable for the ALJ to discount Plaintiff's reported walking and standing difficulties when the medical record before and after the relevant period shows an assistive device or gait therapy was recommended.

On this record, the ALJ's general summary of portions of the medical record does not provide a clear enough rationale that it has the power to convince the Court that Plaintiff's symptom reports are inconsistent with the objective medical evidence. The ALJ—not this Court—must identify the inconsistencies between Plaintiff's reported symptoms and the medical record.[81]

### 7.    Harmful Error

In summary, Plaintiff establishes the ALJ erred when discounting her symptom reports by failing to articulate clear and convincing reasons with citation

---

[80] AR 1832–33.

[81] *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *Ghanim* , 763 F.3d at 1163 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (explaining that an ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints).

to evidence that fairly represents the record. This error impacted the ALJ's

disability analysis, as the ALJ crafted a light work RFC, which requires Plaintiff to

be able to stand or walk up to 6 hours of the day and lift up to 20 pounds at a time

with frequent lifting or carrying of objects weighing up to 10 pounds.[82]  The

allowance for light work was consequential because if Plaintiff is limited to

sedentary work, she may be considered disabled, given her age, education, and past

work.[83]

**B.    Medical Opinions: The ALJ must reevaluate on remand**

Plaintiff argues that the ALJ erred when evaluating several of the medical

opinions, including those authored by Eze Nwaubani, APRN-NP-C; Norman Staley,

MD; and Julia Robertson, MD. Because the ALJ erred when evaluating Plaintiff's

symptom reports, this matter must be remanded, and Plaintiff's symptom reports

and the medical opinions are to be reevaluated on remand.

The following guidance is given to the ALJ for remand purposes. First, the

ALJ may not discount Dr. Staley's July 2013 medical opinion that Plaintiff was

limited to sedentary work[84] on the grounds that the opinion predated the relevant

period, absent a finding that Plaintiff's longstanding conditions sufficiently

---

[82] 20 C.F.R. § 404.1567; SSR 83-10: Titles II and XVI: Determining Capability to

Do Other Work – the Medical Vocational Rules of Appendix 2.

[83] 20 C.F.R. Pt. 404, Subpt. P, App. 2, Medical Vocational Rule 201.14.

[84] AR 139–47

improved after Dr. Staley issued his opinion. Second, the ALJ must consider that ARNP Nwaubani opined that Plaintiff's limitations were present since at least January 1, 2016, even though she issued her opinion in February 2022.[85] Finally, when evaluating Dr. Robertson's opinion, the ALJ is to consider Dr. Robertson's opined limitations, along with her objective findings in her authored treatment records, and may not discount the opinion on the grounds that Dr. Robertson "essentially found the claimant is unable to perform full-time work."[86]

## C. Remand: further proceedings.

Plaintiff seeks a remand for payment of benefits. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[87] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[88] At this time, the Court finds remand for further proceedings is appropriate. The ALJ is given the opportunity again to evaluate the medical opinions, including Dr. Staley's opinion that Plaintiff be limited to sedentary work, as well as Plaintiff's symptom reports.

---

[85] AR 1874.

[86] AR 29.

[87] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[88] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

1

#### IV.    Conclusion

2   Plaintiff establishes the ALJ erred. The ALJ is to reevaluate—with

3   meaningful articulation and evidentiary support—the sequential process.

4   Accordingly, **IT IS HEREBY ORDERED**:

5   1.    The ALJ's nondisability decision is **REVERSED, and this matter is**

6       **REMANDED to the Commissioner of Social Security for**

7       **further proceedings pursuant to sentence four of 42 U.S.C. §**

8       **405(g)**.

9   2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 6 and**

10      **10**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

11  IT IS SO ORDERED. The Clerk's Office is directed to file this order and

12  provide copies to all counsel.

13  DATED this 4th day of September 2024.

14

15  _____
EDWARD F. SHEA
Senior United States District Judge

16

17

18

19

20

21

22

23